

**SIGNED this 04 day of October, 2010.**

_____
**JAMES P. SMITH
UNITED STATES BANKRUPTCY JUDGE**
_____


UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION


| In the Matter of: | : | Chapter 7 |
|---|---|---|
| | : | |
| NANCY DIANE ALLEN, | : | |
| | : | |
| Debtor | : | Case No. 10-50827  JPS |


BEFORE

JAMES P. SMITH
UNITED STATES BANKRUPTCY JUDGE


COUNSEL:

| Chapter 7 Trustee: | Thomas D. Lovett |
| | P.O. Box 1164 |
| | Valdosta, Georgia 31603 |
| | |
| Debtor: | Jason M. Orenstein |
| | P.O. Box 4086 |
| | Macon, Georgia 31208 |

## MEMORANDUM OPINION

This matter arises from the Chapter 7 trustee's objection to Debtor's claim of exemption of an annuity. Upon considering the stipulated facts, the annuity and the arguments of counsel, the Court now publishes this memorandum opinion.

## BACKGROUND

The undisputed facts are that in March 2000, Debtor Nancy Diane Allen[1] was injured in a motor vehicle accident and thereafter asserted a claim for negligence against a third party whose liability insurer was Metropolitan Property and Casualty Insurance Company ("Metropolitan"). In May 2002, Debtor's claim was settled for $225,000 under the terms of a Settlement Agreement And Release which recited in part that "all sums set forth herein constitute damages on account of personal injuries. . . ." Debtor received $200,000 via a cash payment at the time of settlement. The remaining settlement funds, $25,000, were used to purchase an annuity policy from Metropolitan Life Insurance Company ("MetLife") which will pay Debtor $1,101 per month for sixty months commencing in April 2015. Metropolitan is owner of the annuity policy, Debtor is payee of the deferred monthly payments, and a third party is beneficiary should Debtor die. The annuity policy expressly provides that the payments are nonassignable, cannot be encumbered, and will be exempt from the

---

[1] In March 2000, Debtor was known as Nancy Diane Torbush.

claims of creditors to the maximum extent permitted by law.  Although the annuity policy expressly prohibits the acceleration or early withdrawal of any funds, there is no restriction on how Debtor may use the annuity payments.  At all relevant times, Debtor has been a citizen and resident of Georgia.

On March 17, 2010, Debtor filed her Chapter 7 case and listed on Schedule B - Personal Property, the annuity as having a current value of $66,000.  On Schedule C - Property Claimed As Exempt, Debtor claimed the entire value of the annuity ($66,000) as exempt under Georgia Code § 33-28-7, describing it as "annuity from personal injury settlement in 2001, can not receive money until 2015."  On Schedule F, Debtor listed unsecured nonpriority claims totaling $23,650. Through his objection, Walter W. Kelley, Trustee, contends that Debtor's exemptions are limited to those allowed under Georgia's bankruptcy specific exemption statute OCGA § 44-13-100.

## DISCUSSION

Trustee has the burden of proving that the exemption is not properly claimed. Fed. R. Bank. P. 4003(c).  An individual in bankruptcy may claim as exempt certain property of the estate.  11 U.S.C. § 522(b)(1).  Because the state of Georgia has "opted out" of the federal exemption provisions, OCGA § 44-13-100(b), the exemptions that Debtor may claim are, in relevant part, those prescribed by state law. 11 U.S.C. § 522 (b)(2), (3).

Georgia's bankruptcy specific exemptions are found in OCGA § 44-13-100. That statute provides that ". . . any debtor who is a natural person may exempt, pursuant to this article, for purposes of bankruptcy . . ." certain property described therein. OCGA § 44-13-100(a). The only exemption right specifically addressing annuities is found in Section 44-13-100(a)(2)(E). The exemption is limited in amount and is applicable to only certain types of annuities. Specifically, Section 44-13-100(a)(2)(E) allows a debtor in bankruptcy to exempt:

> (2)  The debtor's right to receive:
>
> . . .
>
> (E)  A payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

Other provisions in Section 44-13-100 might be used to exempt a limited amount of a debtor's right to receive payments under an annuity, such as the "wild card" exemption under Section 44-13-100(a)(6) and the exemption of payments on account of personal bodily injury under Section 44-13-100(a)(11)(D).[2]

Contending that Section 44-13-100 is not the exclusive source of exemptions under state law for a debtor in bankruptcy, Debtor seeks to exempt her annuity rights

---

[2] Because none of the exemptions rights under OCGA § 44-13-100 have been claimed by Debtor, the Court takes no position on which, if any, of such exemptions might apply to the annuity rights in question.

4

under Georgia Insurance Code[3] § 33-28-7. This statute was enacted by the Georgia

Legislature in 2006 and provides:

> The proceeds of annuity, reversionary annuity, or pure endowment contracts issued to citizens or residents of this state, upon whatever form, shall not in any case be liable to attachment, garnishment, or legal processing in favor of any creditor of the person who is the beneficiary of such annuity contract unless the annuity contract was assigned to or was effected for the benefit of such creditor or unless the purchase, sale, or transfer of the policy is made with the intent to defraud creditors.[4]

Thus, Georgia's bankruptcy specific exemption statute provides limited protection to the right to receive payments under certain types of annuity policies. However, Section 33-28-7 completely protects annuity payments of all types. Therefore, if Section 33-28-7 is construed to provide an exemption in bankruptcy cases, it would be in conflict with Section 44-13-100.

Contemporaneously with the enactment of Section 33-28-7, the Georgia Legislature also enacted Georgia Insurance Code § 33-25-11(c) to protect an unlimited amount of cash surrender value of life insurance policies.[5] That statute

---

[3] Title 33 is known as the Georgia Insurance Code. OCGA § 33-1-1.

[4] Although MetLife is the owner of the annuity policy in question, the parties did not stipulate nor submit evidence on whether MetLife is a citizen or resident of Georgia. Thus, this statute may not even apply to the annuity policy in question since the statute is limited to contracts issued to citizens or residents of Georgia. Since neither party raised this issue, the Court will assume, without deciding, that the statute is applicable.

[5] Both Section 33-23-7 and Section 33-25-11(c) were enacted during the 2006 legislative session.

5

provides:

> The cash surrender values of life insurance policies issued upon the lives of citizens or residents of this state, upon whatever form, shall not in any case be liable to attachment, garnishment, or legal process in favor of any creditor of the person whose life is so insured unless the insurance policy was assigned to or was effected for the benefit of such creditor or unless the purchase, sale, or transfer of the policy is made with the intent to defraud creditors.

By contrast, the bankruptcy specific exemption statute which addresses the cash surrender value of life insurance policies, Section 44-13-100(a)(9), provides:

> The debtor's aggregate interest, not to exceed $2,000.00 in value, less any amount of property of the estate transferred in the manner specified in Section 542(d) of U.S. Code Title 11, in any accrued dividend or interest under, or loan or cash value of, any unmatured life insurance contract owned by the debtor under which the insured is the debtor or an individual of whom the debtor is a dependent.

As is the case with Section 33-28-7, if Section 33-25-11(c) is construed to provide an exemption in bankruptcy cases, then it will be in conflict with Section 44-13-100.

"For purposes of statutory interpretation, a specific statute will prevail over a general statute, absent any indication of a contrary legislative interest." Vines v. State, 269 Ga. 438, 499 S.E.2d 630, 632 (1998). Further:

> While repeal by implication is not favored, a statute will be held to have repealed a prior statute where the later [i.e. the prior statute] is clearly inconsistent and contrary to the

6

>   most recently enacted law or where the later enactment
>   [i.e. the most recent statute] appears to cover the entire
>   subject matter and give expression to the whole law on the
>   subject.

Kyles v. State, 245 Ga. 49, 50, 326 S.E.2d 216, 217 (1985) (internal quotations and citations omitted).

OCGA § 44-13-100 provides a specific list of exemptions which a debtor may only use in bankruptcy cases.[6] On the other hand, the Georgia Insurance Code "extensively and exhaustively regulates, at the state level, all aspects of the insurance industry in Georgia. . . ." Cotton States Mut. Ins. Co. v. DeKalb County, 251 Ga. 309, 312, 304 S.E.2d 386, 389 (1983). Section 44-13-100 is a statute dealing specifically with bankruptcy exemptions, while Section 33-28-7 is more general in nature. By its text, Section 33-28-7 does not address the subject matter of bankruptcy exemptions at all.

The Georgia Legislature knows how to enact exemption rights applicable to bankruptcy cases. In 1980, when Georgia enacted its first bankruptcy specific exemption statute, former Ga. Code Title 51-1301.1, the preamble of the Act stated that it was "to provide for exemptions to be used for the purposes of bankruptcy and in actions involving bankruptcy." 1980 Ga. Laws, p. 952. The preamble to the 1981

---

[6] OCGA § 44-13-100 is also applicable to intestate insolvent estates where there is a living widow or child of the intestate. OCGA 44-13-100(c).

7

revisions of the Act contained the same language. 1981 Ga. Laws, pp. 626, 627.[7]

There is no indication in the Georgia Insurance Code statutes that the Georgia Legislature intended to amend the bankruptcy exemption rights found in OCGA § 44-13-100. Neither Section 33-28-7 nor Section 33-25-11(c) make reference to Section 44-13-100. Nor do either of the insurance statutes contain a phrase such as "all laws and parts of laws in conflict with this statute are repealed" to indicate that the Georgia Legislature meant to repeal any other statute. See Marshall v. Speedee Cash of Georgia, 292 Ga. App. 790, 792, 665 S.E.2d 888, 890 (2008).

In contrast, in the past, when the Georgia Legislature intended to change the exemption rights available to debtors in bankruptcy, it did so by specifically amending Section 44-13-100. For instance, in its most recent amendments to the bankruptcy exemption statutes, the Georgia Legislature made changes to the language of the statute and substantially changed the dollar amounts for the various types of property exempt under Section 44-13-100 by making changes to that specific statute. See 2001 Ga. Laws, p. 745, § 1.

In summary, there is no indication that the Georgia Legislature intended to amend or supplement the bankruptcy specific exemptions found in Section 44-13-100 by way of the more general Georgia Insurance Code provisions. Rather, it appears

---

[7] Ga. Code Title 51-1301.1 was codified as OCGA § 44-13-100 in 1982. OCGA § 1-1-1 to - 9.

8

that the Legislature intended the Georgia Insurance Code to apply to nonbankruptcy situations, with the bankruptcy specific exemptions in Section 44-13-100 applying in bankruptcy cases.

In support of her contention that Georgia Insurance Code § 33-28-7 provides an additional exemption to those found in Section 44-13-100, Debtor relies upon In re Fullwood, Ch. 13, Case No. 07-41115 (Bankr. S.D. Ga., March 17, 2010) in which Judge Davis held that a workers' compensation lump sum settlement for future benefits was exempt in bankruptcy under OCGA § 34-9-84 (workers' compensation claim for compensation not assignable and is exempt from all creditors' claims). Judge Davis, on page 4, stated "Some of Georgia's state exemptions are found in O.C.G.A. § 44-13-100. . . . [But] [i]n short, not all of Georgia's exemptions are contained within the four corners of O.C.G.A. § 44-13-100." Judge Davis, at pages 4-5, explained:

> Georgia first passed its own bankruptcy-specific exemptions, contained at the time in Ga. Code Title 51-1301.1, in the 1980 legislative session. 1980 Ga. Laws 952. While that statute did not specifically exempt Workers' Compensation awards, it specifically contemplated opting out of the federal exemptions. Id. at § 1. While the statute purported to exempt "for purposes of bankruptcy, the following property:"which did not include Workers' Compensation awards, it did so in the context of a long history exempting Workers' Compensation awards from all claim of creditors. Georgia first enacted its Workers' Compensation statute in 1920. The very first iteration of Georgia's Workers' Compensation statute declared that "no claim for

9

> compensation under this act shall be assignable, and all compensation and claims therefore shall be exempt from all claims of creditors." 1920 Ga. Laws 167, § 22.
>
> Georgia's opt out exemptions were clearly adopted within a framework in which Workers' Compensation claims are completely unreachable by all creditors.  Had the Georgia General Assembly included Workers' Compensation awards in the 1980 bankruptcy exemption list, after sixty years of statutory exemption arising from a different law, it would have been redundant.  The drafters of the legislation assuredly thought that "exempt from all claims of creditors" was strong enough language to ensure that a debtor did not lose rights by declaring bankruptcy.

The historical context of the Workers' Compensation statute is clearly distinguishable from the Georgia Insurance Code annuity statute at issue in this case. As Judge Davis explained in In re Fullwood, workers' compensation benefits had been exempt from creditors' claims for sixty years prior to enactment of Georgia's bankruptcy specific exemption statute.  By contrast, the current verison of Georgia Insurance Code § 33-28-7[8] upon which Debtor relies did not become effective until May 2006, some 26 years after the Georgia Legislature enacted Section 44-13-100. Therefore, while this Court takes no position on whether In re Fullwood was correctly decided, the historical justification relied upon by that court is not present in this case and thus provides no basis for concluding that the Georgia Insurance Code annuity

---

[8] The prior version of Section 33-28-7 protected the interest of a beneficiary or assignee of an annuity contract from the creditors of "the person effecting the [annuity] contract" as long as that person was not also the beneficiary.  See former OCGA 33-28-7 (amended 2006), 1960 Ga. Laws, p. 289 § 1.  The beneficiary was not protected from his own creditors until the 2006 enactment of the current version of Section 33-28-7.

statute provides an additional exemption right to debtors in bankruptcy.

Debtor also relies upon <u>LeCroy v. McCollam</u> (<u>In re McCollam</u>), 986 F.2d 436 (11th Cir. 1993), in support of her contention that the Georgia Insurance Code annuity statue provides an additional exemption. In <u>LeCroy</u>, the Eleventh Circuit had certified to the Florida Supreme Court the question of whether a debtor in bankruptcy could use Florida statute § 222.14 to fully exempt payments the debtor was to receive under an annuity contract purchased by an insurance company in settlement of the debtor's prepetition tort claim. The Florida Supreme Court[9] held that the payments under the annuity contract were exempt for purposes of bankruptcy.

Debtor argues that the Florida annuity exemption statute is very similar to OCGA § 33-28-7 and that this Court should follow the Eleventh Circuit's <u>LeCroy</u> decision. However, Florida law allows debtors to claim the "exemptions given to residents of this state by the State Constitution and the Florida Statutes." Fla. Stat. § 222.20. <u>See</u> <u>In re Stewart</u>, 373 B.R. 736, 739-40 (Bankr. M.D. Fla. 2007). Unlike Georgia, Florida does not have a separate statute prescribing the exemptions available to debtors in bankruptcy. Rather, in Florida the same exemption statutes are available to both bankruptcy debtors and general judgment debtors. Thus, the issue of whether a general exemption statute supplemented a bankruptcy specific exemption statute was not before the Court in <u>LeCroy</u>. Accordingly, <u>LeCroy</u> is distinguishable and provides

---

[9] <u>LeCroy v. McCollam</u>, 612 So.2d 572 (1993).

11

Debtor with no support.

Alternatively, Debtor contends that her annuity is a spendthrift trust and, thus, is not property of the estate under 11 U.S.C. § 541(c)(2). That statute, which excludes spendthrift trusts from property of the estate, provides:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

See 5 Collier on Bankruptcy ¶ 541.27 (16th ed. 2010) (valid spendthrift trust is not property of the estate). Trustee responds that the restrictions on the transfer of Debtor's interest in the annuity are not enforceable under Georgia law because Debtor is both the settlor and beneficiary of a trust. OCGA § 53-12-28(c) ("spendthrift provision [in a trust] prohibiting involuntary transfers is not valid if the beneficiary is the settlor.").[10]

While both 11 U.S.C. § 541(c)(2) and OCGA § 53-12-28(c) concern restrictions on alienation of an interest in a trust, neither Debtor nor Trustee have addressed the issue of whether Debtor's annuity is a trust. The Georgia Insurance Code defines annuity as:

> "Annuity" means a contract by which one party in return for a stipulated payment or payments promises to pay periodic

---

[10] The Georgia Legislature repealed the Georgia Trust Act and replaced it with The Revised Georgia Trust Code of 2010 effective July 1, 2010. 2010 Ga. Laws, p. 579. Because Debtor's bankruptcy case was filed prior to July 2010, the provisions of the Georgia Trust Act apply to this case.

> installments for a stated certain period of time or for the life or lives of the person or persons specified in the contract. The term does not cover the proceeds of life insurance no matter how payable.

OCGA. § 33-28-1(1). The Georgia Trust Act[11] defines trust as:

> "Trust" means a fiduciary relationship with respect to property arising from a settlor's intention to impose equitable duties on a person to hold, manage, or otherwise administer that property for the benefit of another person.

OCGA. § 53-12-2 (8). In <u>Peach Consolidated Properties, L.L.C. v. Carter</u>[12], the court stated:

> "A trust is an equitable obligation, either express or implied, resting upon a person by reason of a confidence reposed in him, to apply or deal with property for the benefit of some other person, or for the benefit of himself and another or others, according to such confidence." (Citation and punctuation omitted.) *Smith v. Francis*, 221 Ga. 260, 267(4)(b), 144 S.E.2d 439 (1965)."

628 S.E.2d at 682. Under OCGA § 53-12-20, an express trust, which must be in writing, has the following elements: an intent to create a trust, trust property, a beneficiary, a trustee, and active duties imposed on the trustee which are specific in the writing or implied by law.

"Annuity agreements create only the relation of debtor and creditor, not a

---

[11] OCGA § 53-12-1.

[12] 278 Ga. App. 273, 628 S.E.2d 680 (2006).

trust." Chatham County Hospital Authority v. John Hancock Mutual Life Insurance Co., 325 F. Supp. 614, 619-20 (S.D. Ga. 1971). "The purchase of an annuity ordinarily creates the relationship of debtor/creditor, not trustee/beneficiary, and a debt is not a trust." Rhiel v. Adams (In re Adams), 302 B.R. 535, 541 (6th Cir. BAP 2003) (internal citations and quotation marks omitted). See In re Hupton, 287 B.R. 438, 443 (Bankr. M. D. Iowa 2002) (consensus of courts is that annuities are not spendthrifts trusts for purposes of § 541(c)(2)). " The relationship of an insurer and an annuitant is not a fiduciary one." 3B C.J.S. Annuities § 34 (2010). "A debt is not a trust." Restatement (Second) of Trusts §12 (2010).

With regard to Debtor's annuity policy, there is no mention of a trust, no appointment of a trustee, no creation of a fiduciary relationship with respect to property, and no duty imposed upon MetLife to hold, manage or administer property for the benefit of Debtor. There is no trust corpus or res. MetLife's sole obligation is to make deferred monthly payments of a fixed amount ($1,101), for a fixed time period (60 months), commencing on a date certain (April 2015). Thus, Debtor's annuity policy is not a trust.[13] Therefore, 11 U.S.C. § 541(c)(2) is inapplicable.

In conclusion, this Court holds that Debtor's interest under the annuity policy is property of the estate. Further, this Court holds that Georgia Insurance Code § 33-28-

---

[13] For this reason, Debtor's reliance on Meehan v. Wallace (In re Meehan), 102 F. 3d 1209 (11th. Cir. 1997), is misplaced because the IRA at issue there was, by statute, a trust. See Id., at 1211 n.4.

7 does not provide Debtor with an exemption right in her bankruptcy case. Rather, with respect to the right to receive payments under the annuity policy, Debtor's exemption rights are limited to those found in OCGA § 44-13-100. Accordingly, the Court will enter an order sustaining Trustee's objection and disallowing Debtor's exemption.

An order in accordance with this memorandum opinion will be entered this date.

**END OF DOCUMENT**